He used to be a district judge out in El Paso. He was a notorious guy. He was nuts. Lawyers were trying the case out there. He told them, I'm going back to Austin. I've got to finish this case. I think that's the one he went on. They got to it. It was a Friday at noon. Every day it was a long trial. Every day he would recess for lunch. A court being recessed at noon for lunch and dinner. He just went to his recitation. On the Friday came, the lawyers came back for lunch and the court walked. They went down and they said, what's going on? He said, well, Judge Lynch got on the bench and left. He said, well, we'll be right back. He said, no, you've been recessing until 1.30. What he said was, the court being recessed until 1 o'clock. And you just didn't hear it. He said, you weren't here. So he dismissed the case. This time we call case number 2015-11185, United States v. Van Allen Smith. You may proceed, Counsel. May it please the Court. My name is Brandon Beck and I represent Van Allen Smith, the appellant in this case. Your Honors, this case is about protecting a defendant's right to retain counsel of his choosing at a revocation hearing. And there are two reasons why this court should reverse and remand. First, a defendant has a right to retain counsel of choice at revocation. And second, given the circumstances, the district court should have granted Mr. Smith's motion for continuance in this case. Your Honors, the timeline in this case is of particular importance to our argument. So I want to lay out a few of the significant dates that we're dealing with here today. Mr. Smith was arrested and received his initial appearance on November 10, 2015. Three days later, he was notified of his revocation hearing, and that was the same day as his detention hearing, which was a Friday. And then he had his actual revocation hearing the following Thursday at 1.30 p.m. There, he asked for a continuance to retain paid counsel, and that continuance was denied. Which brings me to my first point, Your Honor, that a defendant has a right to retain counsel of his choosing even at a revocation hearing. There's two principles that we have to balance in this case. The first comes from the Federal Rules of Criminal Procedure 32.1, which gives a defendant a right to counsel at a revocation hearing. And here's the exact language that the Federal Rules use. It says the person has a right of notice, the person receives notice of the person's right to retain counsel, or to request that counsel be appointed if the person cannot obtain counsel. Now, the competing principle that we have to grapple with in this case is that the Supreme Court and this court have both recognized, as the government will surely point out, that the rights a defendant possesses at a revocation hearing are not the same. They're not as full of a right as a defendant would have at trial under the Sixth Amendment. But we have to look to Sixth Amendment case law for guidance as to the type of rights and how to evaluate a defendant's rights. Even assumed trial, right? Eve of trial, mid-trial, request for continuance based on attorney breakdown, those are assessed according to multiple factors. Yes, Your Honor. And I guess it's pretty established, citing especially Silva, that we would be reviewing the district court's non-continuance here for abuse of discretion. That's correct. Am I right that then we do have to just look at whether there was a clear error in the weighing of the factors and the conclusion that it was an eleventh-hour tactic? Would you have to establish that? Your Honor, it wouldn't be a formal establishment of clear error. We could establish abuse of discretion by showing that the district court weighed the factors in an arbitrary or unreasonable way. And that language actually comes from a case out of this court in Neal v. State of Texas from 1989. So, Your Honor, assuming that we see an implied or a right to counsel of choice if that counsel is retained— Excuse me. When did the federal public defender come into this case? Your Honor, the federal public defender came into this case at the initial appearance. That's when the federal public—on November 10th. How much time lapsed before the—at the initial hearing, you scheduled the hearing, the future hearing, correct? Your Honor, not exactly. The initial hearing, the detention hearing was then scheduled, and then on that date, the revocation hearing. I understand. But the time interval between the—how long had the federal public defender represented this defendant before the hearing at which he requested continuance? Nine total days, Your Honor. All right. That includes two weekend days. And I think that's an important point when we're talking about an individual who was in jail. When did they give notice that they wanted to change lawyers? They gave notice the morning of— Of the hearing. Of the hearing. And Judge Boyle found that they had—the government had produced three witnesses ready to testify. That's absolutely right, Your Honor. And that's actually one of the factors that Judge Higginson mentioned. The factors actually come from a case out of this court, United States v. Huey, 1998. I understand, but I'm just trying to understand on this record what—if my memory is correct, Judge Boyle, their experienced district judge and former assistant to the United States attorney in Dallas, no stranger to trials, said, basically, she refused to grant a continuance because she thought that if we were here, you've got lawyers, and this notice comes so late, you're really just putting things off. Yes, Your Honor. That's about it. That's a judgment trial judges have to make day in, day out. It's certainly a decision that a district court has a good deal of discretion over. Yes. And that's absolutely true. And I want to identify specifically the reasons the government opposed the continuance and then the reasons given by the district court because I think it's important that we're very precise on those three things or those two things. The government gave three reasons for opposing the continuance when it was sought. The first reason is that they had three witnesses, as you mentioned, Judge Higginbotham. The second reason is they said that he had had around a week of notice of the hearing to figure this out. Now, we think that that factor actually goes to our favor. And the third reason was a mention that the victim of the alleged assault in this case that led to the revocation had been contacted in some way. It's not clear by whom or in what way, but that was mentioned as a third reason by the government. Now, the district court gave two reasons for denying the motion for continuance, the first being that the court had, quote, full discretion when it's a late request. That was reason number one. And then reason number two, the district court simply said, I don't believe you when the defendant said, I've been in contact with an attorney.  But this is even in light of the fact that the federal public defender said that the private counsel had contacted me late this morning and said that his family, defendant's family, had contacted private counsel. But when we're deciding the question, don't we consider the totality of the circumstances in addition to the judge's reasons? Absolutely, Your Honor. So we could consider the three witnesses waiting even if the judge didn't specifically mention that at the very time that she made the ruling. Yes, and I didn't want to imply otherwise. In fact, the judge should consider the three reasons in the factors put forth in the Huey case. That's one of the things that's considered is the burden on the government. Well, I'm having trouble with your case because even if you assume that it's a full-fledged Sixth Amendment right, what cases would say this was an abuse? You know, I've spot you the right. I still think the case law would say this was in the ballpark perhaps. And so what case says it's not under Sixth Amendment? Your Honor, I'm not going to be able to provide you with a case that says that there's no question that the district court abused its discretion here. But what I can do is provide the case Huey that's been mentioned that lists five factors for courts to consider. And we can look at the facts and apply them to the factors in this case and then reach the conclusion that the district court had, in fact, abused its discretion. So the first factor that's considered is when was the continuance requested? Now, the government, of course, is going to weigh heavily on this, and I think the district court did as well, referring to this as an 11th-hour request. But I think it's very important to recognize here that notice of this hearing was given six calendar days prior, which includes two weekend days. The defendant was in jail this whole time. So you have a person from jail that's working with their family to come up with money over a short period of time, approximately four business days to find an attorney. So I think it's a reasonable time to request, especially in light of the fact that he had already spoken with counsel, his family had already spoken with retained counsel, and retained counsel had also spoken with the federal public defender. Now, this is very different than the two cases cited by the district court on pages 41 and 42 of the record. There, the district court said that there was precedent for denying this motion for continuance, in particular two cases, United States v. Varka and McCoy v. Cabana, both out of this court, the first in 1990, the second in 1986. In the Varka case, yes, the defendant asked for a new attorney at the quote-unquote 11th hour, but the person had counsel for nine months and had notice of that trial for nine months up to that time. Here, we only had six calendar days, four business days. You may have mentioned it. Is a factor the amount of time requested? And if so, was it, oh, Mr. Pennington will be here this afternoon or tomorrow, or was that never clarified in the record? So, first, Your Honor, that is absolutely a factor. Second, it's not clear in the record. And I think that I want to make a point out of that. I actually want to make two points. He says, I need a continuance. I've got this attorney. I'm trying to get him involved in this case. I've got or I'm thinking of retaining? He's been in contact with an attorney. That's the characterization. So he didn't have him yet. Yeah. So that's true. I would think that if the district judge were taking the request seriously, the follow-up question would be, how long do you need? Yeah. That question was never asked, and the answer was never offered without it being asked. Is there any, switching from facts to law, is there any circuit that's reversed a continuance denial that was requested on the day of the proceeding and this is a compound sentence, and didn't leave the defendant pro se? Do you want me to repeat that? Yes, Your Honor. And I think the case I could point this court to comes from the United States Supreme Court, which is United States v. Gonzalez-Lopez. Now, the circumstances of that case were admittedly much more extreme than this case. That's where a person had retained counsel. It was not a counsel of choice, and the district court was preventing their counsel of choice, who was present sitting in the gallery, from having any contact with the person. That case was reversed. That was a day of, but did it leave the defendant with no counsel? It didn't. It did not. So I'm asking you, can you think of any, because he or two, your client, wasn't left without counsel. I'm just wondering, is there any court that's ever found abuse of discretion denying a continuance on the eve of the event that didn't leave the defendant pro se? Well, in Gonzalez-Lopez, the defendant was not left pro se. I know, I know, but neither was your client here. In other words, I would see that you would have to grant a continuance, even in a last-minute request context, if it left the defendant without any counsel. And I don't know the answer to your question. Yeah. It's a little esoteric. There's probably a case in a district court out there somewhere where something like that happened. I didn't mention something else there is. No, no, you're right. If I ask something off the brief, you're right to tell me, go look. I mean, I should come up with it myself. It's not in the brief. Well, I'm not quite saying that. No, you said it politely. One other thing that didn't happen here, one of the cases cited by the district court is McCoy v. Cabana as a basis for denying this continuance. Actually, that's the factually most similar case to the one we have here. The outcome is the same as what the government's asking for here. But what's important is the defendant had said, hey, I've been in contact with this attorney. I want to get them down here. We haven't retained him yet, but we're trying to get him here. And here's what the judge did in that case. The judge said, I'm going to take five minutes, let's go into chambers, and called that alleged private attorney at his office and at his home. Here, what we have is the judge saying, I simply don't believe you, without asking follow-up questions, without making a phone call. And I'm not saying that that in itself is clear error per se, but I'm saying there was never even a recognition here of a person who is facing a significant sentence, in this case it ended up being 50 months, who has had four business days to find counsel, who's saying, I have somebody, here's their name, their name is Austin Pennington. Is it established in the record the witnesses that were there were the victims, the alleged victims themselves? Your Honor, one of the witnesses was the victim who was not there voluntarily. She was subpoenaed. The other two witnesses, one was the detective from the state law enforcement office, and the second was U.S. probation. And I do want to comment that that's not an excessive burden in this case, at least when you compare it to facing a more than four-year prison sentence. The U.S. probation officer's job is to be in that building most of the time. A police officer's part of their job is to testify in court. In fact, before I became an attorney, I worked at a prosecutor's office as a victim witness coordinator. My job was to get officers to testify. They loved to testify because they get paid time and a half, and they were always happy when there was a continuance because they get paid either way. But the victim who had to be subpoenaed, who may have been facing some sort of improper pressure, that the court certainly could keep that and take that especially into consideration. Your Honor, I see I'm out of time. May I answer your question? Please do. Yes, Your Honor, the court should take into account that the victim was there to testify. But the burden on the victim is to be subpoenaed again and come back perhaps a week later. And that burden is not nearly as high as a person facing a long term of imprisonment. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you. Good morning, and may it please the Court. I'm Emily Falconer for the United States. This is not a case where the panel needs to delve into the specifics of the scope of the right to counsel at a revocation hearing. This is a procedural case that deals with the district court's discretion to deny a continuance. And in particular, the court's discretion to deny a continuance when faced with the following facts. The request made only an hour before the hearing was to begin. Witnesses assembled, including, as Judge Elrod mentioned, the victim who was there only under subpoena. The district court had the opportunity to observe those witnesses, including the victim, at that hearing. We also have a situation where the victim had been receiving unwanted contact from the defendant's family and friends. And the reasons presented are relevant as well. The district court was never told that Mr. Smith had retained an attorney or was definitely going to retain an attorney. She was told only that he had, quote, thought of, had contacted an attorney. His family had contacted the attorney with the, quote, thought of retaining him. There was no evidence that the family could afford to retain the attorney. The retainer had been paid. The attorney did not appear at the hearing that day. No reason was given for his absence, or no suggestion was made that he would be available at a later time. And so all of these factors are before the court in evaluating, for this panel to evaluate, that exercise of discretion. Now, here, under these facts, there was no abuse of discretion, let alone a clear abuse of discretion. And I think the standard of review is extremely important in this case. Clear abuse of discretion is a mandamus standard. So in order for the panel to reverse the district court here, it would have to find that under the same facts it would grant mandamus relief. When you say we shouldn't go to the Sixth Amendment, nonetheless, your brief did purport to urge some broader Sixth Amendment principles. I read your brief to suggest that there could be no right to counsel at all.  I know you're saying it's unnecessary, but you're not pushing that argument? No, Your Honor. Our position is certainly not that there's no right to counsel. There's clearly a right to counsel revocation conferred by the rules and the due process laws. Right. The Sixth Amendment does not apply. That's black-letter law. The question, and we were really — our position is really not, the government's not staking out the claim that there's no right to counsel of choice. Yes. At revocation, we were really just agreeing with Mr. Smith's assertion in his brief. What about your — another claim that seemed broad that would be a much further reach for us to make, which is that even if a court said you did have a right to counsel, we would ever be in a position to say that's harmless? Do you have any case that stands for that proposition in the context of denying right to counsel? Your Honor, it's not in the harmless error argument either. But it was in the brief. Well, the argument we're making in the brief was not — the argument was that — not that the error was harmless and so that therefore the panel should not reverse. But the argument was that in light of the overwhelming nature of the evidence, that that could factor into or bolster the district court's factual determination that this was an eleventh-hour delay tactic. Right. Coupling that with the unwelcome contact of the family and friends, pressuring the victim not to testify. Does the record reflect that the district court in denying a continuance did tell the defendant he could proceed pro se or not? I don't believe that the request was made to proceed pro se, but — No, no. But my understanding from some case law is that if you're going to deny a continuance, the court should tell the defendant, I'm not going to allow you to continue to get one, but you have a right to represent yourself. Well, Your Honor, the defendant does not have a right to represent himself in a revocation hearing. That's what this Court said in United States v. Hodges. That's one of the ways in which the right to counsel is more circumscribed in the context of revocation. But that request was not made here, and that admonishment was not given. But, again, he wouldn't have had that right to proceed pro se. And there's no duty to inquire into how long it will take to get Mr. Pennington here? The law doesn't suggest that that's a factor. It's only discussed as a factor to be considered, the timing, how long it would be requested. But, no, there's no firm. In fact, what the United States Supreme Court said in the Unger case that we submitted in our 28-J letter was that, in fact, there really is no ñ this is a very fact-intensive case-by-case determination. So there really is no ñ and it is difficult, as you mentioned, Judge Higginson, to draw an analog between the trial context and the revocation context, where the issues are much more limited in scope, the evidence is much more fresh, the witnesses ñ you know, it's a very limited proceeding as opposed to a trial, which could take months to prepare for. So the timing is not as closely analogous there. On the subject of timing, we would also like to visit the issue of the timeline of the case. How long did he have to ñ between the notice of the hearing and the time of the revocation? It was not 6 days. He made his initial appearance ñ it was 9 days. He made his initial appearance on November 10th with Camille Knight, his attorney, who he later sought to replace. And on that day, he was given notice of the hearing. This is page 11 of the record. There is an initial appearance form that is signed by his attorney that contains at the bottom of the page the date of the revocation hearing, 9 days hence. Additionally, one of the stated reasons for wanting to replace Ms. Knight ñ and this is important, I think, in the district court's factual finding that this was a delay tactic ñ was that Camille Knight made ñ supposedly, allegedly made an error in magistrate court. Camille Knight represented him in court at the revocation hearing, and before that only at the initial appearance. Again, that's page 11. We don't have a transcript of that. That wasn't placed in the record. But you can see from that page in the record that Ms. Knight was present at that one. And the interim hearing, the detention hearing, she was not. Her colleague, Lauren Woods, represented him. So, necessarily, 9 days elapsed between this alleged mistake made by Ms. Knight in court and the date that he sought to replace her. And that's another thing that I think factors into the determination of whether or not he's being straightforward. Bad faith. One of many factors. Does bad faith trump all factors? There's ñ I don't believe ñ There's a number of other lawsuits. My understanding of the cases, Your Honor, the Unger case, is that there's no one factor weighs more heavily than others in all instances. It's just something that we have to look at the facts of each particular case. But bad faith is just one of several factors? One of several factors to be considered. One of the factors is, you know, the defendant's reasons, and in particular whether there's reason to believe those are in bad faith. But this is one of the situations ñ I think this is a perfect illustration of why the district court has entrusted such broad discretion in this area. Because in determining bad faith, a lot of things are relevant, the facts presented, but also the defendant's demeanor, which the district court had the ability to assess. When he stood up and addressed the court and explained his reasons wanting to replace his lawyer, she's in a position to, you know, just like with a witness testifying at trial, she's able to evaluate his demeanor and whether or not he's being forthcoming. So I would say that's one of the reasons why the district court's afforded such broad discretion in this arena. I would like to say, too, that, you know, even if he had the most robust right to counsel as possible, even if the court wanted to import all the entire Sixth Amendment principles into this case, even under that most robust articulation, this court has said that that is a limited right ñ the right to counsel choosing is a limited right ñ that entitles a defendant only to a fair or reasonable opportunity to retain his chosen counsel. That's what this court said in United States v. Huey, the case on which Mr. Smith primarily relies ñ fair or reasonable opportunity. Now, nine days in a situation like this, where the issues are so limited, the evidence is fresh, the witnesses are assembled, there is a video ñ this entire incident is captured on video. The defendant is aware of that. Nine days is more than a reasonable and fair amount of time to retain an attorney. In the Unger case, in fact, the Supreme Court said that five days in an analogous context was enough to retain an attorney. This court said in the Huey case ñ now, that case involved a number of different requested continuances, and that was a trial, a complicated set of issues. But one of the issues, one of the junctures at which the defendants complained that he was denied his right to counsel, this court said his chosen counsel was allowed to withdraw and he was given five days to replace him. And this court said five days in that circumstance was reasonable. So depending on the circumstances ñ again, it's a case-by-case, but depending on the circumstances, just a handful of days can be a reasonable time for a defendant But again, I would just emphasize that the government's position is that the court does not need to weigh into the specifics of what the right to counsel is, although the government takes no position. If the court wishes to articulate a robust right to counsel verification, the government does not oppose that. But really, this is a case about procedure. It's a case about the district court's discretion in the exercise thereof. And so for those reasons, the government would ask this court to affirm, because there has been no abuse of discretion here, no arbitrary and reasonable action, let alone one that could be said to be a clear abuse of discretion such that would give rise to extraordinary relief. So if the panel has no further questions, thank you. Thank you. May it please the Court. Your Honors, two points on rebuttal. This Court has been very clear in adopting the U.S. Supreme Court's notion that although a defendant doesn't have full Sixth Amendment rights at a revocation hearing, a revocation hearing is very similar to or connected to the Sixth Amendment trial context because, quote, the loss of liberty involved in a revocation hearing is a serious deprivation. In fact, we saw that here. If you're a criminal defendant, it feels exactly the same because you're told you have to go back to prison. So for this reason, I think that the right to retain counsel has to include, even under Rule 32.1, the right to counsel of choosing. Second, the question was brought up by Judge Higginson about harmless error review. And I think the response was that there was an overwhelming evidence in this case, and the Court should consider that. Well, there wasn't overwhelming evidence before the Court at the time the motion for continuance was denied. But even so, the United States Supreme Court said in Gonzalez-Lopez very clearly that the right to a fair trial is separate and apart from the right to counsel. They went on to say, quote, harmless error analysis in such a context would be a speculative inquiry into what might have occurred in an alternative universe. So when it comes to the right to counsel, we need to get it right the first time at the beginning. And if not, we can't imagine what would have happened. Third, they said that we had a, quote, fair and reasonable opportunity to get counsel, saying that nine days, including two weekend days, is a fair and reasonable amount of time. And our point is very strong in that when you're in jail, that is not a reasonable amount of time, perhaps, to retain counsel of choice. We know that he tried. We know that he was in the process. Perhaps he was on the eve of retaining counsel. But we would certainly concede that five more days would have been enough time. That would have been reasonable. Did the record, what was the happenstance remark? Did that reflect that he tried for the first time the day before, or is it not subject to that? Well, the happenstance remark was not made by defendant, first of all. I want to be very clear on that. That's the district court saying, so you're saying this just happened by happenstance. And the defendant says, well, yes, that's correct, Your Honor. So the happenstance remark is he was dissatisfied with his court-appointed attorney. He was in jail. He was talking to another inmate. The inmate said, hey, I've got this guy, he's really good, named Austin Pennington. I'll send him your way. He did. The ball started rolling. The family members contacted Austin Pennington, who then contacted the federal public defender and notified her that, hey, I might be retained in this case. We know that he wasn't retained at that point. But it certainly seems like something was happening here, and I think the district court perhaps should have made a couple phone calls. I'm not saying, again, that it was clear error not to, but I think that that would have given the defendant more dignity in this process that led to this type of a sentence than simply saying, I don't believe you. You don't have evidence that you even have the money to pay. You don't have the evidence that you've even talked to anyone. And who is he in a position to do anything but tell the court, well, I did talk to somebody, and my family does have money to pay. So I think that he was being held to an unreasonable burden in terms of an evidentiary burden in this case, and there was simply an attitude in the court that this person is here to play games. They waited until the last minute, but he's already in jail, Your Honors. It's not like it's someone that's out on bond about trials about to occur, and they want to be free a little bit longer. This is a person who's already in custody, and they're simply saying, I want to have this other guy come in and represent me because I think he can do a better job. And for these reasons, we think, Your Honors, that the district court clearly abuses discretion in denying the motion for continuance. We ask this court to recognize a right to counsel of choice. We ask this court to recognize there's no harmless error view, and we ask this court to reverse and remand. Thank you, Your Honors. Thank you.